IN THE UNTED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

|  |  |
|---|---|
| James and Shelly Timmons, Individually and as Parents and Natural Guardians of XT,<br>　　　　　　　　Plaintiffs,<br>vs.<br><br>United States of America, Olukayode Akinjala, M.D., Health Partners of South Carolina, Inc., and Conway Medical Center, Inc.,<br>　　　　　　　　Defendants. | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, by and through undersigned counsel submit the following Complaint in the above-referenced matter:

**I.** Affidavits of expert witnesses, subject to the Affidavit requirements established in § 15-36-100 1976 SC Code of Laws as amended, are attached hereto under Tab 1.

**II.** The parties have not yet mediated this action.

**III.** The Plaintiffs respectfully request a jury trial for this matter.

### PARTIES, JURISDICTION AND VENUE

**1.** Plaintiffs James Timmons, Shelly Timmons, and XT are residents and citizens of the State of South Carolina.

**2.** The United States is a proper Defendant under the provision of 28 U.S.C. § 1346 (the Federal Tort Claims Act), herein after referred to as the FTCA. Pursuant to the FTCA, the

1

United States is subject to suit "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

3. Upon information and belief, Dr. Olukayode Akinjala, M.D., (hereafter "Dr. Akinjala") is a citizen and resident of the State of South Carolina.

4. Upon information and belief, Health Partners of South Carolina, Inc.,(hereafter "Health Partners") is a domestic corporation registered to do business in South Carolina and is doing business in Horry County, South Carolina.

5. Upon information and belief, at all times relevant to the facts and circumstances of this matter, Dr. Akinjala was an employee and/or owner of Health Partners.

6. Upon information and belief, Defendant Conway Medical Center, Inc. (hereafter "Conway Medical") is a domestic corporation registered to do business in South Carolina and is doing business in Horry County, South Carolina.

7. Upon information and belief, Conway Medical receives funding under the Health Center Program, section 330 of the Public Health Service (PHS) Act (42 U.S.C. 254b), as amended, and is a covered entity under the Federally Supported Health Centers Assistance Acts (FSHCAA) of 1992 (Pub. L. 102-501) and 1995 (Pub. L. 104-73) as a Community Health Center (CHC) funded under section 330(e).

8. Upon information and belief, at all times relevant to the facts and circumstances of this matter Dr. Akinjala was working for Conway Medical as an independent contractor pursuant to the FSHCAA.

9. Eligibility for FTCA protections has been extended to Community Health Centers (CHC), funded under section 330(e) and qualified contractors of the covered entity.

10. The negligent acts and omissions of Conway Medical and Dr. Akinjala are within the scope of coverage of the FTCA.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1346(b) as to the United States, Conway Medical and Dr. Akinjala.

12. The claims against all defendants arise out of the same act or occurrence as claims against the United States and therefore this Court has jurisdiction over this matter as to Health Partners of South Carolina, Inc. pursuant to its supplemental jurisdiction under 28 U.S.C. §1367.

13. Venue is proper in the District of South Carolina, because South Carolina is where the parties all reside, the place of incorporation for the corporate defendants, the place where their business actions occurred, and the place where a substantial portion of the acts or omissions occurred.

14. An administrative claim was timely presented and no ruling has been made in the six months following the filing of the Notice of Claim.

## FACTUAL ALLEGATIONS

15. Plaintiffs reallege the paragraphs above as if fully restated herein.

16.     Plaintiffs are the parents and natural guardians of the minor child XT and are residents of Horry County, South Carolina and have been at all times relevant to the facts and circumstances of this matter.

17.     Upon information and belief, Defendant Olukayode Akinjala, M.D., (hereafter "Dr. Akinjala") is a physician licensed by the South Carolina Board of Medical Examiners and is a citizen and resident of Horry County, South Carolina. As a licensed physician responsible for obstetrical care of Plaintiff Shelley Timmons during the weeks preceding and time of her labor and delivery, Dr. Akinjala had a duty to exercise due care in the medical care rendered to Ms. Timmons and her unborn child.

18.     Upon information and belief, Defendant Healthcare Partners of South Carolina, Inc. (hereafter "Healthcare Partners") is a domestic corporation registered to do business in South Carolina. The employees and staff of Healthcare Partners had a duty to exercise due care in the medical care rendered to Ms. Timmons and her unborn child.

19.     Upon information and belief, Defendant Conway Medical Center, Inc. (hereafter "Conway Medical") is a domestic corporation registered to do business in South Carolina, is doing business in Horry County, South Carolina, and is a covered entity under the Federally Supported Health Centers Assistance Acts (FSHCAA) of 1992 (Pub. L. 102-501) and 1995 (Pub. L. 104-73) as a Community Health Center (CHC) funded under section 330(e).  The employees and staff of Conway Medical Center had a duty to exercise due care in the medical care rendered to Ms. Timmons and her unborn child

20.     Ms. Shelly Campbell Timmons was under the care of Dr. Akinjala, as a contractor for Conway Medical and an employee or owner of Healthcare Partners of South Carolina, Inc. in the latter portion of her 2011 pregnancy. According to her medical records, on September 29, 2011, Ms. Timmons was thirty-six weeks gestation. The fetus fundal height by ultrasound was measured at 41. Additionally, her sonogram showed polyhydraminos.

21.     Ms. Timmons returned to Healthcare Partners on October 6, 2011. According to the medical records, her sonogram findings were explained. It also notes "Labor precautions" and weekly NSTs were ordered.

22.     On October 18, 2011, Ms. Timmons was seen again by Dr. Akinjala. That afternoon, she was admitted to Conway Medical Center for induction of labor. Dr. Akinjala never discussed scheduled cesarean section delivery with Ms. Timmons prior to the induction of labor.

23.     At approximately 6:05 p.m., Dr. Akinjala was called and informed of Ms. Timmons' deceleration with hypertonic contraction. Dr. Akinjala was called again at approximately 6:50 pm and informed that Ms. Timmons continued to have hypertonic contractions. Ms. Timmons continued to have hypertonic contractions throughout the night with noted accelerations of the fetal heart rate.

24.     At approximately 6:38 a.m. on October 19, 2011, Ms. Timmons was given Pitocin. At approximately 7:46 a.m. on October 19, 2011, Dr. Akinjala came to see Ms. Timmons. Her cervical dilation was noted to be 2. Dr. Akinjala ordered more Pitocin which was administered by Conway Medical staff.

25. Dr. Akinjala again examined Ms. Timmons at approximately 11:25 a.m. Her cervical dilation was noted to be 3. She was given more Pitocin at approximately 11:55 a.m.

26. Dr. Akinjala again examined Ms. Timmons at approximately 12:05 p.m. Shortly thereafter, a new higher Pitocin dosage was administered and an epidural was placed successfully.

27. Over the next few hours, Ms. Timmons was given increasingly higher dosages of Pitocin. Ms. Timmons' labor progressed slowly and her contractions were frequent and lengthy. As she experienced continued difficulty in labor. Dr. Akinjala never discussed cesarean section delivery with Ms. Timmons.

28. At approximately 5:50 p.m., decelerations were noted with contraction and the fetal heart rate was noted to be tachycardic. Proper intrauterine resuscitation was not instituted.

29. Ms. Timmons began pushing with contractions. Dr. Akinjala was called for delivery at approximately 8:58 p.m. In the course of delivery, vacuum assistance was used beginning at +2 station. A midline episiotomy was also performed with a 3rd degree laceration. Shoulder dystocia was noticed after delivery of the head. The McRoberts maneuver and suprapubic pressure was applied with no relief. In order to deliver the baby, the shoulders were rotated with the right shoulder anterior.

30. Prior to performing an episiotomy and using a vacuum to assist in delivery, Dr. Akinjala never discussed cesarean section delivery with Ms. Timmons or the risks associated with vacuum-assisted vaginal delivery.

31.     At approximately 9:45 p.m., Ms. Timmons gave birth to a 10 lb., 8 oz. baby boy. At birth, the baby's Apgar score was 2. He was noted to be blue/pale and unresponsive with no respiration. Ten minutes after his birth, his Apgar score was 9 and his respirations normalized.

32.     Almost immediately, the baby was observed to hold his right arm down to his side with little movement. Small bruises were also noted behind the baby's right shoulder. The pediatrician ordered x-rays of the right shoulder which revealed no displaced fractures. On October 21, 2011, the baby was discharged from Conway Medical Center.

33.     On October 26, 2011, Ms. Timmons brought the baby back to Conway Medical Center's Emergency Department.

34.     Upon presentation, she informed the hospital staff that when the baby was born, they were told he had a shoulder problem. Possible dislocation. They state that they want to know if the shoulder is dislocated or not. States patient is not moving his right arm and has bruising on it." Following examination, the baby was diagnosed with erb's palsy.

### FOR A FIRST CAUSE OF ACTION
### (Negligence as to Defendants Akinjala and Conway Medical and Health Partners)

35.     Plaintiffs reallege the previous paragraphs as if fully restated herein.

36.     Defendant Conway Medical was negligent, grossly negligent, willful, wanton and reckless in the following particulars and deviated from the appropriate standards of care, with each sub-paragraph below sufficient to support the relief sought:

   a.   in failing to monitor adequately the labor and delivery of a patient with known polyhydraminos and large fetus size;

7

  b. in failing to inform the physician consistently of fetal hyperstimulation due to the increased frequency of contractions;

  c. in continuing to administer Pitocin for too long at an excessive dose where the fetus was already hyperstimulated in the labor process and where continuing Pitocin is contraindicated and increasing the dosage is further contraindicated;

  d. in failing to institute proper intrauterine resuscitation to a patient in labor when the baby was noted to be in fetal distress; and

  e. in failing to communicate with the physician when a patient with known polyhydraminos and large fetus size entered the final stages of labor so that the physician had sufficient time to evaluate and offer delivery options.

37. Defendants Akinjala and Healthcare Partners were negligent, grossly negligent, willful, wanton and reckless in the following particulars and deviated from the appropriate standards of care, with each sub-paragraph below sufficient to support the relief sought:

  a. in failing to offer the option of a cesarean section versus a trial of labor in a patient with polyhydrarninos and large fetus size and in failing to disclose the risk/benefit alternatives of each;

  b. in failing to monitor adequately the labor and delivery of a patient with known polyhydraminos and large fetus size;

  c. in failing to properly diagnose and assess fetal hyperstimulation due to the increased frequency of contractions;

8

   d. in continuing to prescribe Pitocin for too long at an excessive dose where the fetus was already hyperstimulated in the labor process and where continuing Pitocin is contraindicated and increasing the dosage is further contraindicated;

   e. in failing to offer an expectant patient in labor a cesarean rather than vaginal delivery when the baby was noted to be in fetal distress;

   f in failing to institute proper intrauterine resuscitation to a patient in labor when the baby was noted to be in fetal distress;

   g. in failing to offer the option of a cesarean section rather than a vacuum-assisted vaginal delivery when it became apparent one of the two methods would need to be employed in the face of fetal distress and in failing to disclose the risk/benefit alternatives of each; and

   h. in failing to assess and inform a patient in labor and delivery of the risks associated with a vacuum-assisted vaginal delivery, specifically risks outlined in a black box warning issued by the FDA regarding increased morbidity and mortality, as well as the significantly increased risk of brachial plexus injuries when compared to spontaneous deliveries or cesarean delivery.

## **FOR A SECOND CAUSE OF ACTION**
### **(Negligence as to the United States of America)**

38. Plaintiffs reallege the previous paragraphs as if fully restated herein.

39. Dr. Akinjala and Conway Medical under FSHCAA, are deemed to be Federal employees for the purpose of medical malpractice under the FTCA.

40. As a result of the negligent acts and omissions by Dr. Akinjala and Conway Medical recited in the preceding paragraphs, Plaintiffs sustained medical expenses, pain and suffering, mental anguish and permanent impairment.

41. Due to the injuries sustained by Plaintiffs as a direct and proximate result of the negligence and carelessness of Dr. Akinjala and Conway Medical, Plaintiffs are entitled to receive actual damages in such an amount as the Court may determine.

## DAMAGES

42. Plaintiffs reallege the previous paragraphs as if fully restated herein.

43. As a direct and proximate result of Defendants' acts and/or omissions set forth above, Ms. Timmons experienced physical pain and suffering, medical expenses and emotional distress.

44. As a direct and proximate result of Defendants' negligence as set forth above, the minor child, XT, suffered oxygen-deprivation in the delivery process and sustained Erb's palsy. He suffered, suffers and may in the future suffer physical pain and suffering, developmental delay, emotional distress, as well as decreased use, strength and mobility of the affected limb. His parents incurred medical expenses in the care and treatment of his condition and may continue to incur medical expenses.

## PRAYER FOR RELIEF

45. Plaintiff realleges the previous paragraphs as if fully restated herein.

46. Plaintiffs demand that all causes of action triable by a jury be so tried.

47. Plaintiffs pray unto the Court for the following relief:

a. Actual damages in an appropriate amount against all Defendants;

b. Punitive and exemplary damages, as allowed by law, and

c. Such other and further relief as the Court deems just and proper.

SOLOMON LAW GROUP, LLC

BY   s/Carl L. Solomon
Carl L. Solomon (7306)
Ronald E. Alexander (9695)
P.O. Box 1866
Columbia, South Carolina 29202
(803) 391-3120 telephone (803) 509-7033 fax

February 12, 2015

11